In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00206-CV
_____

**OTOTRONIX, LLC, Appellant**

**V.**

**INTEGER HOLDINGS CORP., AS SUCCESSOR IN INTEREST OF GREATBATCH LTD. AND AFFILIATES, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-04-04460-CV**

**MEMORANDUM OPINION**

In two issues, Appellant Ototronix, LLC ("Ototronix") challenges the trial court's denial of summary judgment in its favor and the granting of summary judgment in favor of Integer Holdings Corp., as Successor in Interest of Greatbatch Ltd. and Affiliates ("Integer"). For the reasons discussed below, we affirm the trial court's judgment.

1

Background

Ototronix is a medical device company that designs and manufactures advanced technologies for treating hearing impairment. For one of its products, the MAXUM hearing implant, Ototronix relies on other entities to construct various component parts that are ultimately integrated into its final product which must undergo an approval process with the FDA. In 2010, Ototronix engaged Greatbatch to fabricate a canister component for the MAXUM implant. According to Ototronix's CEO, Michael Spearman, Ototronix would send Greatbatch the canister bodies, canister lids and the magnets that go inside them, and Greatbatch's job was to assemble those three components and then hermetically weld the lid to the canister, put a dimple in the canister and then leak test it.

Ototronix's pleadings in the trial court, and its brief in this appeal, assert Ototronix's agreement with Greatbatch consisted of three documents: a Quote, an Order Acknowledgment, and a Standard Purchase Order, each of which was subject to standard terms and conditions. The Quote, dated July 27, 2010, indicates Greatbatch would provide "Tooling and Fixtures" and "Engineering time for Development and Qualification," with a "Scope of Work" that included receiving, inspecting, cleaning and passivating vendor parts, assembling, welding, dimpling and leak testing. Greatbatch provided an Order Acknowledgment on September 1,

2

2010, specifying a price of $24,700 for the "Non-Recurring Component/Assembly Development Charge." Greatbatch admits Ototronix paid for the development, validation and fixturing for the welding process related to the hearing implant.

Greatbatch's January 31, 2011 Standard Purchase Order identifies Ototronix as the "Seller" of 50,000 canisters, 50,000 lids, and 2,502 magnets which Ototronix shipped to Greatbatch's facility in Clarence, New York, pursuant to paragraph 2 of the Purchase Order's Terms and Conditions. Paragraph 5 states, "Title to the goods will pass to Greatbatch upon their delivery to such location."

Ototronix's practice was to place orders with Greatbatch whenever it needed assembled canisters, and some or all of the assembled canisters would then be used by Ototronix in the final assembly of the hearing implant. If Ototronix's inventory of assembled canisters decreased below a certain level, it would order more from Greatbatch. As of April 30, 2012, Greatbatch still had 49,626 canisters, 49,252 lids and 1,818 magnets, and because these components were so small, one witness testified they "would probably fit in three small sandwich bags." Beginning sometime in 2012 or 2013, Ototronix did not place any further orders for assembled canisters from Greatbatch. Then in July 2019 when Ototronix attempted to contact Greatbatch to place an order for assembled canisters, it learned that Greatbatch had

been acquired by Integer, that the Clarence, New York, facility had been closed, and that the canister bodies, lids and magnets had been discarded.

On April 8, 2020, Ototronix sued Integer, alleging several causes of action, including breach of contract, breach of bailment agreement, fraud, intentional and negligent misrepresentation, negligence, breach of express and implied warranty, and violations of the Texas Deceptive Trade Practices Act. On appeal, Ototronix's brief challenges the trial court's summary judgment only with respect to allegations of breach of contract and breach of bailment agreement. Ototronix's petition asserts Integer and Greatbatch breached their contract with Ototronix by failing to properly maintain inventory components, protocols, validations and data. The petition claims Integer and Greatbatch breached a bailment agreement because they knew or should have known that Ototronix expected and was entitled to the return of its unused inventory as well as at least some of the test method validations and data.

Integer answered, denying all of Ototronix's allegations and asserting affirmative defenses, including the statute of limitations.

Motions for Summary Judgment

Integer filed a Traditional and No-Evidence Motion for Summary Judgment relying on summary judgment evidence consisting of excerpts from the depositions of Ototronix's CEO, Michael Spearman, and employee, Brian Spearman. Based on

4

this testimony, Integer's motion asserts: (1) it was Ototronix's practice to communicate purchase orders to its vendors on an "as needed" basis; (2) Ototronix did not sign any "master agreement" with Greatbatch for the manufacturing of the implant device component; (3) Greatbatch performed under the purchase orders that were sent from Ototronix to Greatbatch; (4) since sometime in 2012-2013, Ototronix did not send any further purchase orders to Greatbatch; (5) there were no issues with the units provided by Greatbatch in performance of the purchase orders; and (6) Ototronix was able to complete the manufacturing of the ear implant device and receive an approval from the FDA. Integer's motion asserts the statute of limitations ran in 2017, four years after the timeframe in which Greatbatch had been providing Ototronix with assembled canisters during the FDA approval process. Thus, according to Integer, limitations expired about three years before Ototronix's Original Petition was filed on April 8, 2020.

As an alternative basis for summary judgment, Integer's motion asserts Ototronix "cannot prove that there is a valid, enforceable contract between the parties or that [Ototronix] fully performed under such contract or that [Integer] breached any contract or that any such alleged breach caused to [Ototronix] any damages." According to Integer's motion, any contractual relationship between Ototronix and Greatbatch was on an "as needed" basis, and there was no "master

agreement" or long-term relationship between the parties, as evidenced by the lack of any purchase orders between 2013 and 2019. Regarding Ototronix's claim for alleged breach of bailment agreement, Integer's motion incorporates its arguments and evidence regarding breach of contract and asserts there is no evidence of any bailment agreement between the parties, and that any validation data had already been provided to Ototronix by way of Greatbatch's performance under the purchase orders.

Ototronix filed a First Amended Motion for Summary Judgment asserting the evidence conclusively establishes each element of its claims for breach of contract and breach of bailment agreement.[1] Ototronix's summary judgment evidence consists of: (1) the affidavit of Michael Spearman; (2) Ototronix's Purchase Order Confirmation dated July 29, 2010; (3) Greatbatch's Standard Purchase Order dated January 31, 2011; (4) Quote Number OTT-CLA-27072010-1 dated July 27, 2010; (5) Order Acknowledgment dated September 1, 2010; (6) Credit Memo dated April 8, 2011; (7) Defendant's Responses to Plaintiff's First Requests for Admissions; (8) Greatbatch's Certificate of Amendment to the Amended and Restated Certificate of Incorporation; and (9) excerpts from deposition of Eric Hollnagel.

---

[1]Ototronix previously filed a Traditional Motion for Partial Summary Judgment based solely on its breach of contract claim. That motion was denied.

Integer filed a Response to Plaintiff's First Amended Motion for Summary Judgment, making arguments substantially similar to those in its Traditional and No-Evidence Motion for Summary Judgment.

Ototronix filed a Response to Defendant's Traditional and No-Evidence Motion for Summary Judgment, incorporating its previously filed Amended Motion for Summary Judgment, along with its attached summary-judgment evidence. Ototronix's Response asserts there is more than a scintilla of probative evidence in support of its claims, sufficient to raise a genuine issue of material fact. In response to Integer's assertion that Ototronix's claims are barred by the statute of limitations Ototronix's Response argues, "There is no evidence whatsoever that Greatbatch and/or Integer ever attempted to return the inventory. It is undisputed that Ototronix's inventory was delivered to and stored at Greatbatch's Clarence facility. It is also undisputed that the inventory was ultimately destroyed by Greatbatch."

Integer filed a Reply to Plaintiff's Response to Defendant's Traditional and No-Evidence Motion for Summary Judgment asserting Ototronix failed to produce any evidence negating Integer's affirmative defense of statute of limitations and failed to raise a genuine issue of material fact on the challenged elements of its claims.

7

The trial court signed an Order on Motions for Summary Judgment and Final Judgment which denies Ototronix's First Amended Motion for Summary Judgment, grants Integer's Traditional and No-Evidence Motion for Summary Judgment and orders that Ototronix take nothing on its claims against Integer. Ototronix then filed this appeal.

Analysis

In its first issue, Ototronix argues the trial court erred in granting Integer's motion for summary judgment. Integer's motion asserts alternative grounds for summary judgment; first, Integer claims the summary judgment evidence establishes as a matter of law Ototronix's claims are barred by the statute of limitations, and alternatively, Integer claims there is no evidence of essential elements of Ototronix's causes of action. Because the trial court's order does not specify the grounds upon which summary judgment is granted, we must affirm if any ground is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000). When a defendant files a traditional motion combined with a no-evidence summary judgment motion, we review the no-evidence grounds first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Werth v. Johnson*, 294 S.W.3d 908, 909 (Tex. App.—Beaumont 2009, no pet.).

8

As nonmovant in response to Integer's no-evidence motion, Ototronix was required to produce summary judgment evidence sufficient to raise a genuine issue of material fact on each element challenged by Integer. Tex. R. Civ. P. 166a(i); *Ford Motor Co.*, 135 S.W.3d at 600. "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citation omitted). Ototronix argues it produced more than a scintilla of evidence for each element of its breach of contract and breach of bailment claims.

*Breach of contract claim*

The elements of breach of contract are: (1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's breach of the contract, and (4) damages resulting from the breach. *Trahan v. Fire Ins. Exchange*, 179 S.W.3d 669, 674 (Tex. App.—Beaumont 2005, no pet.). Because Integer's no-evidence motion challenged each of these elements, Ototronix was required to present evidence sufficient to raise a genuine issue of material fact as to each. *See* Tex. R. Civ. P. 166a(i); *Ford Motor Co.*, 135 S.W.3d at 600.

9

Ototronix produced evidence sufficient to raise a fact issue that a valid contract was formed in 2010-2011 and that Ototronix performed under the contract. In Ototronix's First Amended Motion for Summary Judgment which is incorporated by reference into its Response to Integer's Traditional and No-Evidence Motion for Summary Judgment, Ototronix cites the following provision of the July 29, 2010 Purchase Order Terms and Conditions: "The Agreement shall become binding when accepted by Seller [Ototronix] either by acknowledgment or performance." Ototronix produced evidence it performed under the Purchase Order by shipping the canister bodies, lids and magnets to Greatbatch's facility in Clarence, New York, pursuant to paragraph 2 of the Terms and Conditions. In so doing, Ototronix bound itself to the Terms and Conditions, including paragraph 5 which states, "Title to the goods will pass to Greatbatch upon their delivery to such location."

Next, we examine whether Ototronix provided the trial court any evidence that Greatbatch or Integer breached the contract. In its motion for summary judgment, which was incorporated into its response to Integer's motion, Ototronix asserted Greatbatch breached the contract by failing to "deliver the goods and provide the services" as set forth in the contract. We address each allegation separately.

10

Ototronix has not pointed to any provision in the Quote or the Order Acknowledgment wherein Greatbatch obligated itself to deliver any "goods" to Ototronix and the January 31, 2011 Purchase Order called for Ototronix to deliver "goods" to Greatbatch, not the other way around. Moreover, according to paragraph 5 of the Purchase Order's Terms and Conditions, title to the goods passed to Greatbatch when they arrived at Greatbatch's facility. There is no provision requiring the goods to be returned to Ototronix nor prohibiting Greatbatch (or Integer) from destroying or disposing of the goods. Ototronix points to paragraph 3 of the Terms and Conditions, which states, "Goods shipped to Greatbatch prior to the delivery schedule in the Order, or in excess of the quantity ordered, may be stored or returned to Seller, in either case at Seller's expense." However, Ototronix did not provide the trial court any evidence the goods were shipped to Greatbatch ahead of schedule nor in excess of the quantity ordered, so there is no evidence this provision was ever triggered. Therefore, although Ototronix produced evidence that the goods were not returned and were eventually discarded by Greatbatch or Integer, this is not evidence Greatbatch or Integer breached the contract, because the contract provided that Greatbatch acquired title to the goods upon delivery and there was no provision in the contract requiring Greatbatch to return the goods nor prohibiting Greatbatch or Integer from discarding them.

Next, we address whether Ototronix produced evidence that Greatbatch failed to provide any "services" for which Ototronix paid. Ototronix's summary judgment evidence included the affidavit of its CEO, Michael Spearman, who swore, "To this date… Integer refuses to render the services for the development, validation and fixturing for the welding process, as agreed upon by and paid for by Ototronix." It is noteworthy Spearman's affidavit uses the present tense, but there is no evidence of a contract requiring Integer to provide any services to Ototronix in 2019 when Ototronix sought to place an additional order for assembled canisters. To the contrary, Ototronix has always asserted the contract in this case consists of the July 27, 2010 Quote, the September 1, 2010 Order Acknowledgment and the January 31, 2011 Purchase Order. Of these, only the Quote imposed any duty on the part of Greatbatch to render services to Ototronix. Specifically, Greatbatch was to develop "Tooling and Fixtures," provide "Engineering time for Development and Qualification," with a "Scope of Work" which included "receiv[ing], inspect[ing], clean[ing] and passivat[ing] vendor parts" and "assembly, welding, two dimpling operation and leak testing." Ototronix did not produce any evidence Greatbatch failed to perform these services, but even if it had, Integer is correct that any such claim would have been barred by the statute of limitations when Ototronix filed suit in 2020 since the most recent dealings between the companies occurred in 2012 or

12

2103. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (imposing residual limitations period of four years).

The summary judgment evidence conclusively establishes the engineering and development services required of Greatbatch under the Quote necessarily preceded the manufacturing services described in the Quote's Scope of Work. Michael Spearman testified as follows:

> In order to go into production, a company needs to sit down, develop the process, write it up, then they have to go ahead and manufacture, you know, three production runs, three small production runs, usually three, and validate that the process is in control and will deliver the final product. And then they have to write the validation steps. It was not just the welding, it was also the same thing for the leak testing, to make sure that the welding was hermetically sealed. So, consequently, if you have all the details and all the facts and all the processing, it's a lot easier to start manufacturing again because you just follow the steps of the recipe. And this process becomes a recipe for how to manufacture, how to test it under whatever the qualifications are.

Integer provided the trial court summary judgment evidence conclusively establishing that all the manufacturing services for which Ototronix paid were performed to Ototronix's satisfaction no later than 2013. Michael Spearman testified:

> Q. Prior to 2019 when Ototronix wanted to do another order, when was the last time that such order for canisters was communicated to Greatbatch?

13

A.     I don't know. It might have been some initial run-throughs or runs in 2012, 13, somewhere in that time frame. I don' know if there was any subsequent to that or not.

. . .

Q.     So from 2012 to 2013 until 2019, you were okay with the canisters that you had to continue with your production, but back in 2019, you needed more and so you communicated that to Greatbatch to manufacture more?

A.     I think that's right. I think that's a fair assessment.

. . .

Q.     You, as Ototronix, did not prepay any manufacturing from Greatbatch, you were just going Purchase Order by Purchase Order to when you needed certain production, the quantity that you needed, then you would also identify the pricing and you would go with that Purchase Order, the new Purchase Order, right?

A.     Yes.

Q.     Okay. Up until 2019 when you were notified that the Greatbatch facility was closed, did you have any issues with that particular business transaction that you had with Greatbatch as far as the canisters go?

A.     I don't think so. Nothing that became aware to me at my level. The canisters worked very well for our patients.

Q.     They were the type of canisters that you needed, the specifications that were provided to them?

A.     Yes, they met those specifications.

Because the summary judgment evidence conclusively established the development and manufacturing services required of Greatbatch under the Quote

14

and paid for by Ototronix were performed no later than 2013, and because Ototronix did not produce evidence of a more recent contract requiring Integer to provide any services thereafter, Ototronix did not produce any evidence to support its assertion that Integer breached a contract by refusing to provide services.

Lastly, Ototronix complains on appeal that Greatbatch or Integer also disposed of validation data. However, Ototronix did not move for summary judgment on this basis nor did it oppose Integer's motion for summary judgment on this basis. "In an appeal from a summary judgment, issues to be reviewed by the appellate court must have been actually presented to and considered by the trial court." *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 196 (Tex. 2022), citing Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). That said, Ototronix does not point to any requirement in the contract that would require Greatbatch or Integer to maintain any such data.

Because Ototronix did not provide the trial court evidence to support its claims that Greatbatch or Integer breached the contract by failing to deliver goods or by failing to provide services required by the contract, the trial court did not err in granting Integer's motion for summary judgment with respect to Ototronix's breach of contract claim.

*Breach of bailment claim*

To prove a bailment, a plaintiff must establish: (1) the delivery of personal property to another in trust for a specific purpose; (2) acceptance of such delivery; (3) an express or implied contract that the trust will be carried out; and (4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs. *Sisters of Charity of the Incarnate Word, Houston, Tex. v. Meaux*, 122 S.W.3d 428, 431 (Tex. App.—Beaumont 2003, pet. denied). Integer's no-evidence motion for summary judgment contended there was no evidence of a bailment agreement between the parties. Consequently, the burden shifted to Ototronix to produce evidence sufficient to raise a genuine issue of material fact on this element of its bailment claim in order to avoid summary judgment. *See* Tex. R. Civ. P. 166a(i).

We have reviewed Ototronix's evidence and conclude there is no evidence to establish an express or implied bailment agreement between Ototronix and Greatbatch or Integer. As noted above, Ototronix shipped canister bodies, lids and magnets to Greatbatch's facility in New York pursuant to the Terms and Conditions of the January 31, 2011 Purchase Order. Paragraph 5 of the Terms and Conditions

16

states, "Title to the goods will pass to Greatbatch upon their delivery to such location." Ototronix presented no evidence that Greatbatch held the property in trust, nor that Greatbatch was required to return the property to Ototronix. Therefore, the trial court properly granted Integer's motion for summary judgment with respect to Ototronix's breach of bailment claim. We overrule Ototronix's first issue.

In its second issue, Ototronix argues that the trial court erred in denying its First Amended Traditional Motion for Summary Judgment. As movant, Ototronix was required to produce evidence conclusively establishing each element of its cause of action. *Travis v. Travis*, No. 09-20-00116-CV, 2022 Tex. App. LEXIS 2581, at *9 (Tex. App.—Beaumont Apr. 21, 2022, no pet.) (mem. op.). As discussed above, Ototronix failed to produce evidence sufficient to raise a fact issue on each element of its breach of contract and breach of bailment claims. We overrule Ototronix's second issue.

Conclusion

Having overruled Ototronix's issues, we affirm the judgment of the trial court.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on February 21, 2024
Opinion Delivered November 21, 2024
Before Golemon, C.J., Wright and Chambers, JJ.

17